IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

AARON MICHAEL WYGANT,           )
                                )
        Plaintiff,               )
                                )
    v.                           )   Civil Action No. 15-1422
                                )
CAROLYN W. COLVIN,              )
COMMISSIONER OF SOCIAL SECURITY,)
                                )
        Defendant.               )

O R D E R

AND NOW, this 21st day of December, 2016, upon consideration of the parties' cross motions for summary judgment, the Court, upon review of the Acting Commissioner of Social Security's final decision, denying Plaintiff's claim for child's insurance benefits based on disability under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely

1

because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1]  Plaintiff argues, in essence, that the Administrative Law Judge ("ALJ") erred by: (1) failing to find that Plaintiff's impairments meet the criteria of Listings 12.02, 12.04, or 12.10; and (2) failing to properly evaluate certain evidence in making Plaintiff's residual functional capacity assessment ("RFC"). The Court disagrees and finds that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

First, Plaintiff argues that the ALJ erred in finding that Plaintiff's impairments do not meet the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (the "Listings") at Step Three of the sequential analysis. Specifically, Plaintiff asserts that the ALJ "found that the Plaintiff's impairments, though serious in nature, did not meet any of the Listings as promulgated by the Social Security Administration," and that "[i]n making his finding that Plaintiff was not disabled, the ALJ committed an error of law in disregarding objective evidence and giving more credence to other evidence without sufficient reason." (Doc. No. 13, at 8). Because the ALJ found that Plaintiff has several severe impairments, including allergic rhinitis, chronic sinusitis, hyperlipidemia, IgA (immunoglobulin) deficiency, obesity, ADHD, pervasive development disorder/Asperger's disorder, learning disorder, and depressive disorder not otherwise specified, Plaintiff does have a condition or conditions that could potentially qualify as a disorder under one or more of the above-mentioned Listings. (R. 15). Plaintiff argues that the evidence clearly establishes that his condition or conditions meet the requirements of one or more of these Listings.

According to the statute, however, the required level of severity for the disorders referenced in these Listings is met only "when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02, 12.04; see also § 12.10 (the required level of severity for autistic disorder and other pervasive developmental disorders "is met when the requirements in both A and B are satisfied"). As the ALJ explained in his analysis of this issue, in order to satisfy the paragraph B criteria of these Listings, Plaintiff's impairments have to result in at least two of four of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (R. 15). The ALJ discussed Plaintiff's symptoms and treatment in his decision, but he ultimately found that the above-stated requirements were not met or medically equaled. (R. 15-17). In fact, the ALJ clearly and thoroughly addressed each of the above elements and concluded that Plaintiff's limitations included the following: mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and that Plaintiff had experienced no episodes of decompensation of extended duration. (R. 16-17). The Court notes that "episodes of decompensation" are specifically defined in the statute as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning . . . . that would ordinarily require increased treatment or a less stressful

situation . . . . and may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household)." 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(C)(4). The evidence cited by Plaintiff does not indicate the existence of any such episodes. Accordingly, because Plaintiff's impairments have not caused at least two marked limitations, or one marked limitation and repeated episodes of decompensation of extended duration, the Court finds that the ALJ appropriately found that the paragraph B criteria of Listings 12.02, 12.04, and 12.10 were not satisfied. (R. 17).

Additionally, there is no evidence that Plaintiff meets the paragraph C criteria of these Listings either. (R. 17). Although Plaintiff appears to allege that because he depends on his mother at home, he us unable to function outside of a highly supportive living arrangement (or that he is unable to function independently outside of his home), his contention that this scenario is sufficient to satisfy the C criteria of the Listings is unfounded. The evidence of record, to which the ALJ cited, simply does not establish that Plaintiff's home environment is comparable to the structure found in a hospital, halfway house, or board and care facility (nor that he is unable to function independently outside of his home). See Stalnaker v. Astrue, 2011 WL 2269413, at *16 (N.D. W. Va. Apr. 20, 2011). Thus, the Court finds no merit in Plaintiff's argument that his impairments meet the severity of Listings 12.02 or 12.04.

Nevertheless, Plaintiff contends either that substantial evidence of record supports the applicability of the Listings or, in a related argument, that the ALJ failed to consider properly certain evidence in formulating Plaintiff's RFC. The Court disagrees.

In support of his arguments, Plaintiff first cites to a report written in 2010 by Martin Meyer, Ph.D., and Julie Uran, Ph.D. (R. 393-400). This report, however, predates the relevant period by approximately two years and, therefore, the ALJ was not even required to consider it in reaching his decision. See 42 U.S.C. §§ 404.1512(d), 416.912(d) (providing that evidence from more than a year before a claimant's filing date is generally not relevant to a case). Moreover, Dr. Meyer and Dr. Uran do not actually opine in their report that Plaintiff has marked limitations sufficient to satisfy the B criteria, that Plaintiff requires a highly supportive living arrangement such as that referenced in the C criteria, or that Plaintiff actually satisfies the requirements of one of the Listings. In fact, their report includes a list of possible job recommendations for Plaintiff. (R. 399). Thus, Plaintiff's RFC would not necessarily have been any more restrictive if the ALJ had explicitly considered this report from before the relevant time period.

Plaintiff also cites to the opinion of consultative examiner Daniel Materna, Psy.D., as evidence establishing that Plaintiff meets one of the Listings. (R. 453-62). Here too, however, Dr. Materna did not specifically opine that Plaintiff satisfied one of the Listings. Furthermore, Plaintiff's argument that Dr. Materna's report establishes that he satisfied a Listing—along with Plaintiff's contention that Dr. Materna's report was not properly relied upon in determining Plaintiff's RFC—are simply without merit. Instead, after consideration of Dr. Materna's medical source statement and mental status evaluation of Plaintiff, the ALJ clearly chose to assign "little weight" to Dr. Materna's opinion, and the Court notes that his decision to do so is supported by

substantial evidence. (R. 26). For example, the ALJ noted that Dr. Materna was a one-time consultative examiner who provided only a snapshot of Plaintiff's functioning. (R. 26). The ALJ also explained that Dr. Materna's opinion is inconsistent with the other evidence of record, including the doctor's own objective assessment. (R. 21, 26, 457-62). Instead, the ALJ decided to give "great" weight to the opinion of state agency reviewing psychologist Emanuel Schnepp, Ph.D., who found that Plaintiff has mild to moderate functional limitations, but is "still capable of carrying out short and simple instructions and meeting the basic mental demands of competitive work on a sustained basis." (R. 25, 91-92). On the other hand, the ALJ gave little weight to the medical source statement completed by John S. Venglarcik, III, M.D., who opined that Plaintiff's "mental impairments imposed no limitations in the ability to understand, remember, and carry[ ]out instructions; interact appropriately with supervision, coworkers, and the public; and respond appropriately to changes in work setting." (R. 25, 376-78). The ALJ noted that Dr. Vanglarcik was not Plaintiff's psychiatric provider, that there was no indication he has expertise in that area, and that his opinion was largely inconsistent with Plaintiff's psychiatric diagnoses. (R. 25). Similarly, the ALJ rejected the opinion of treating cardiologist Jose Millan, M.D. (who noted few restrictions for Plaintiff) because mental assessments were not within his area of expertise. (R. 25, 470-72). Therefore, upon review, the Court finds that the ALJ thoroughly reviewed the various medical opinions in the record, and did not err in failing to give greater weight to the opinion of Dr. Materna in evaluating whether Plaintiff meets a Listing or in formulating Plaintiff's RFC.

Although Plaintiff makes a number of other related arguments to support his general contention that the ALJ failed to consider the evidence which establishes that he meets a Listing (or that he failed to consider such evidence properly in determining Plaintiff's RFC), none of these additional contentions have merit. For example, relying on Doak v. Heckler, 790 F.2d 26, 29 (3d Cir. 1986), Plaintiff argues, generally, that the ALJ was not permitted to make the findings that he did, setting his expertise against a physician who presented competent evidence. (Doc. No. 13 at 11, 17). As this Court explained in Doty v. Colvin, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014), in Callahan v. Colvin, 2014 WL 7408700 (W.D. Pa. Dec. 30, 2014), and in various other recent decisions, the Doak opinion does not hold that an ALJ's RFC findings must be based on a specific medical opinion. Moreover, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011); see also 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c); S.S.R. 96-5p, 1996 WL 374183 (S.S.A. 1996). Furthermore, an RFC is properly based on all of the relevant evidence in the case record. See 20 C.F.R. §§ 404.1545, 416.945. An ALJ is not limited to choosing between competing opinions in the record, and may instead develop his own. See 20 CFR §§ 404.1546(c), 416.946(c). Therefore, the ALJ is not required to rely only on a particular physician's opinion, and the RFC finding is actually an administrative—rather than a medical—determination. See 96-5p, 1996 WL 374183, *5. Thus, in this case, the ALJ did not err in determining Plaintiff's RFC after considering the various medical opinions offered in the record.

Plaintiff also argues that the ALJ did not adequately consider the testimony of Plaintiff regarding his symptoms. In determining whether a claimant is disabled, the ALJ must consider all of a claimant's symptoms and the extent to which the symptoms can reasonably be accepted

4

as consistent with the objective medical evidence. See 20 C.F.R. §§ 404.1529(a), 416.929(a). A claimant's subjective complaints of symptoms alone are not sufficient to establish disability. See id. In evaluating a claimant's subjective complaints, the ALJ must consider, first, whether the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms he alleges. See 20 C.F.R. §§ 404.1529(b), 416.929(b). Once an impairment is found, the ALJ then must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit his ability to work. See 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii) (factors relevant to symptoms can include daily activities, medications and medical treatment). In his decision, the ALJ discussed, at significant length, Plaintiff's medical treatment and Plaintiff's own statements in connection with his alleged impairments. The ALJ found that Plaintiff has a number of severe impairments, as set forth, supra. (R. 15). However, upon review of all the evidence of record, the ALJ ultimately found that the evidence as a whole simply does not support the extreme limitations that Plaintiff alleges. In the end, the ALJ found, after careful consideration of all the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons he provides in his decision. (R. 19). The Court finds that the ALJ did not err in evaluating Plaintiff's subjective allegations because he thoroughly reviewed them in accordance with the regulations, and he provided sufficient explanation as to why he found those allegations to be not entirely credible.

Plaintiff also argues that the ALJ failed to consider adequately the testimony provided by Renee Zamary, Plaintiff's mother. Under the statute, however, an ALJ is not required to utilize lay witness evidence. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Nevertheless, as the ALJ noted in his decision, he did consider the lay testimony of Ms. Zamary and afforded it "some weight in reaching this decision given her relationship with the claimant." (R. 26). The ALJ also stated that Ms. Zamary (who is not an "acceptable medical source" under the statute, see 20 C.F.R. §§ 404.1513(a), 416.913(a)) "is not medically trained to make a diagnosis or argue the severity of the claimant's symptoms in relationship to his ability to work." (R. 26). He further noted that Ms. Zamary has been assisting Plaintiff financially and therefore has a financial interest in seeing him receive benefits, so her opinion is not necessarily unbiased. (R. 26). The ALJ therefore concluded that, to the extent Ms. Zamary's statements conflict with the adopted RFC, "greater weight must be given to the acceptable medical source opinions and treatment record," which he discussed. (R. 26). The Court thus finds that the ALJ adequately considered Ms. Zamary's opinion, and he did not err in declining to give that opinion controlling weight.

In addition, Plaintiff contends that the ALJ erroneously evaluated Plaintiff's GAF scores, and that he erred in failing to give greater weight to higher scores provided in the record rather than to the lower score assigned to Plaintiff by Dr. Materna. However, in his review of the medical records and his discussion of the Plaintiff's treatment, the ALJ specifically addressed the various GAF scores assigned to Plaintiff in 2013, including a score of 75 documented by Kenneth Bill, D.O., a score of 63 assigned by Gina C. Lombardi, M.A., and a score of 50 assigned by Dr. Materna. (R. 19-20, 26). While Plaintiff argues that the ALJ should have placed greater weight on the GAF score of 50 assigned by Dr. Materna, the Court notes that in addition to evaluating thoroughly Dr. Materna's opinion overall, discussed supra, the ALJ clearly

explained that he reconized the lower GAF rating upon consultative exam with Dr. Materna, but he did not adopt that score because it was based merely on a single examination, and because he found it to be "largely inconsistent with the claimant's overall mental health treatment records." (R. 26).

Finally, Plaintiff asserts that the ALJ erred in not relying on the VE's answers to various follow-up questions at the administrative hearing. While the hypothetical question to the VE must accurately portray the claimant's impairments, such question need only reflect those impairments that are adequately supported by the record. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the Court finds that the ALJ's hypothetical question to the VE fully accommodated the limitations that were supported by the record, which were also properly included in the RFC. The ALJ accounted for the limitations supported by the record when he asked the VE to assume an individual of Plaintiff's age, education and work experience who is limited to medium work but can lift up to 50 pounds occasionally and can lift or carry up to 25 pounds frequently, can stand or walk for approximately 6 hours in an 8-hour workday, and can sit for approximately 6 hours in an 8-hour workday; who would have to avoid even moderate exposure to extreme cold, extreme heat, wetness, humidity, and irritants such as fumes, odors, dust, and gases; who would be limited to 1 and 2-step tasks, and simple, routine and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes; and who can have only occasional interaction with the public and only occasional supervision. (R. 27, 79-80). Considering these limitations, the VE testified that such an individual would be able to perform the requirements of representative occupations such as sandwich maker, bagger, and hand packer. (R. 27, 80).

Plaintiff argues, however, that the ALJ should have instead relied upon the VE's responses to the ALJ's follow-up questions. Those questions included how many unexcused or unscheduled absences employers customarily tolerate from their employees each month, how much time off-task employers customarily tolerate, and the questions also addressed possible additional limitations such as whether there is any work in the region or national economy for an individual who is incapable of working 8 hour days 5 days a week, and whether there is any such work available for an individual who needs more than usual supervision to remain on task and productive. (R. 80-81). While the ALJ did pose those follow-up questions at the administrative hearing, when he ultimately formulated Plaintiff's RFC, the ALJ concluded that such additional restrictions did not need to be included therein. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (explaining that your RFC "is the most you can still do despite your limitations"). Thus, the Court finds that the ALJ relied upon the response to an appropriate hypothetical question which included those limitations, properly portrayed in the RFC, that were supported by the record.

As to any additional arguments mentioned summarily by Plaintiff in his brief, the Court finds that he has failed to establish how the ALJ's failure to consider properly any additional evidence of record constitutes reversible error.

In sum, the ALJ addressed all relevant evidence in the record, including full consideration of the opinion evidence, and he thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that the ALJ did not err in concluding that

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 14) is GRANTED.

s/ Alan N. Bloch<br>United States District Judge

ecf:	Counsel of record

---

Plaintiff's impairments failed to meet the severity of Listings 12.02, 12.04, or 12.10. Additionally, the Court finds that there is substantial evidence to support the ALJ's reasons for not giving controlling weight to certain opinion evidence in the record, as well as his decision to give greater weight to other opinion evidence in reaching his final determination. Finally, the Court finds that the ALJ did not err in assessing Plaintiff's testimony or that of his mother, nor did the ALJ err in evaluating Plaintiff's GAF scores or in relying on the responses of the VE to his hypothetical questions. Accordingly, the Court affirms.